The next case for argument is 24-1301, Clark v. DocuSign. Mr. Samuels, we'll read it whenever you are. Good morning, Your Honor. May it please the Court. We're here today to address a couple of very simple issues. The Board, third, in that it engaged in an implicit claim construction of the term target network application level protocol. And that implicit claim construction was incorrect, which led to an incorrect determination of obviousness. The nature of the implicit claim construction is really highlighted in the Board's discussion of how the Duncan reference applies to the claims. As I understood your briefing, you say the problem with the claim construction is that the Board said that the two protocols could be the same. Yes, Your Honor. Is that the issue we're talking about? Yes, Your Honor. I guess I'm not understanding the relevance because I think what the Board said was essentially it doesn't matter and okay, let's assume that the protocols are different. Duncan still teaches that if the protocols are different. What am I missing in this record here? Well, Your Honor, the Board credited Dr. Clark's testimony to say that what happens at Duncan is that an HTT protocol going into the converter begets an HTTP protocol coming out of the converter with comments appended, security comments appended. So the Board on the one hand is saying that what happens in Duncan is that you have the same protocol coming out of the converter. And so if that's the case, then if the claim were to be construed as requiring a different protocol, that would not meet the claim limitation. The Board also said while they recognized Dr. Clark's statement of what Duncan teaches, they also said that Dr. Black opined that coming out of the converter there was a protocol. And I want to get the claim. Well, counsel, I thought that Clark relied on converting HTTP to HTTPS as translating. Is that not true? So what happened with that, Your Honor, was during the prosecution of Dr. Clark's patent application, he had a demonstration to the patent examiner. And as part of that demonstration, he showed a conversion from HTTP to HTTPS. But those are two different protocols. And Dr. Clark testified to that, and the Board did not challenge that testimony. They accepted that representation. Those are two different protocols. They have two different protocol standards. They operate on different ports. So they're still distinct protocols. And as I understand what DocuSign to be arguing as well, Dr. Clark's demonstration sets the bar for how much difference there has to be between the protocols for Duncan to meet the claim limitation. But again, HTTP to HTTPS is a conversion of one network application-level protocol to a second network application-level protocol. And the conversion that Duncan describes is a conversion at the network level, not at the application level. In fact, Dr. Black's declaration says, in his opinion, and this would be Appendix 885, Paragraph 147, in his opinion, when data is sent out by a standard browser, 38, and a proxy browser, 45, to the server, the protocol converter, 71, converts the data from an application protocol of the browser, HTTP, to a network protocol of Duncan's network. So that's at the network level. That's his description of what's going on at 71. His conclusion, the next sentence that follows, says that hence Duncan teaches translating perceived data from a first network application-level protocol to a target network application-level protocol. What's missing is the explanation of how the network protocol of Duncan's network is functioning at the application level, which is what's required under the claim construction for network application-level protocol. Dr. Black doesn't explain that. So the precise language of Duncan says that it's a network protocol. So that's why, Judge Gross, it's important to distinguish as to whether the claim requires a second distinct network application-level protocol, or whether it could just be, as the board has said, a same-yet-modified protocol, or something different. Can you point us to what the board said in its opinion that you're disagreeing with then? Because they've got a pretty detailed analysis of all the arguments, and then why they accepted Dr. Black's analysis. So, yes, Your Honor. At appendix 25, the board says, because... Twenty-five? Where on 25? Appendix 25. Where? In the... Paragraph, patent notary, paragraph, furthermore. Which paragraph? Patent notary. Patent notary. What sentence? And we're going down to the 1, 2, 3, 4, 5, 6, 7. The seventh line, beginning with because. Right after the it, it says, because the HTTP application protocol of the browser is uncontestedly a network application-level protocol, Duncan's modified-yet-same network protocol is, in patent notary's view, also a network application-level protocol. So they're saying it's the same protocol, and our argument is that the claim requires it to be different. It says Duncan's argument is. Duncan's modified-yet- That's your argument, in that opinion. I'm sorry. Are you pointing to the because sentence? Yes, I am, Your Honor. Right. And if we... As they're saying, because it is a network protocol, Duncan's modified, i.e., its other one, is, in patent notary's view, also the same one. Correct. That's not the board agreeing with you. Well, they probably... And the board pointed out in Duncan himself, where Duncan at column 9, line whatever it is, 4 or 5, says that the two can be fundamentally different. So the column that... Like fundamentally different, not the same. And that's a fact-finding, I think, that the board relied on. The fundamentally different language from Duncan, column 8, so appendix 118, bridging to 119, where Duncan states, the server can access the data bank via a specific transfer protocol. For accessing this data bank, the network protocol can differ. It's talking about a network protocol. So the server is sending out the message over a network. So Duncan is clearly here talking about a network protocol, not a network application-level protocol. Again, Duncan doesn't explain here that fundamentally different protocols operate at an application level. There are many, many network protocols. It could be IP, Netbootly, AppleTalk, all these different... I'm not sure the argument you're making now you made before the board. If you did, I'm surprised they didn't address it. They seem to have relied on this provision in column 9 as adverse to your claim. They did rely on it, Your Honor. And what we're arguing, again, is that the protocol, they relied on that statement as applied to what Dr. Black said about the protocol that comes out of Converter 71 and what the patent says about that protocol, what Duncan says about that protocol. And again, that description does not explain how that protocol operates at the application level. So the board combined Dr. Clark's statement that it could be the same protocol and Dr. Black's statement that the protocol is converted according to the needs of the network to say that there could be a different network application level protocol. That doesn't follow. Counsel, you didn't propose a construction for the translating limitation, right? No, Your Honor.  And the only disputed claim construction before the board was network application level protocol? Yes, Your Honor. And you also agree that Duncan discloses all the limitations of the asserted claims except for the translation limitation? Your Honor, yes, to an extent. What we contend is that the 1.6 limitation of the claim requires there to be a different and distinct network application level protocol, whether that's through the target protocol, whether that's through the translation. You have to have a distinct network application level protocol. In fact... So was that construction ever given below that that would be required, or did you ever propose that that should be? We didn't propose that construction, Your Honor. What we would say is that there are different words used for the respective network application level protocols first and targeted. And, of course, there is sort of a rebuttable presumption that if you're using different words to talk about different items... And it can be just a tiny bit different. It doesn't have to be, the way you say, significantly different. Well, it has to... Pardon me, Your Honor? When you have different language, then the law says we expect a different structure, right? Yes, Your Honor. But you're making an argument here that it doesn't have to be different. It has to be materially significantly vastly different, like the difference between HTTP and HTTPS. That's not enough. That's not what the law requires. The law requires that there should be a tiny difference between the two... No, Your Honor, we're not arguing that the difference between HTTP and HTTPS isn't enough. Those are two different protocols. We're not arguing that. We would argue that. I think the point that we're talking about is that the main argument you're making here is not... When the board is looking and saying, well, is the translating limitation met in Duncan? Not whether there are two different protocols. The question presented to the board was, does Duncan teach translating? And the board said, of course it does. And you don't make a very strong argument here that Duncan doesn't teach translating. You're saying, oh, no, no, overall a wholly different way of looking at the case. The two protocols have to be significantly different, even if they're translating. Well, because you can translate a protocol at the network level. You can translate it at the network application level. So I think we have to look at the complete plain language, which says translating the first network application-level protocol to a second network application-level protocol. Where at all in your briefing did you make... The briefing to us, did you make this argument about a difference between the network protocol and the network application protocol that you're describing now? Give me just a moment, Your Honor. Your Honor, can I get those sides to come back up? I'm going to butt in. Sure, Your Honor. You've got all the time, so why don't we hear from the other side? Thank you. Good morning, Your Honor. Michael Sackstetter, Fenwick & West, on behalf of DocuSign. May it please the Court. Substantial evidence supported the board's determination that the free challenge patents are invalid. As the board noted in its footnote 4, that is true regardless of whether there is a claim construction issue or not concerning whether the target protocol can be the same or modified or different or second or separate or any of those words distinct from the first protocol because the board relied on evidence that showed that even under the most restrictive construction of that claim limitation, that that requirement was satisfied in Duncan. The board discusses first the portion of Duncan that describes Figure 2 of Duncan, which shows the basic network architecture, and it shows two different protocols, one for the network between the browser and the web server, one for the network that goes to what's called the back end, the database, basically a database server, which we would assert if that's been argued, and I don't think it has, if that's not a network application-level protocol, well, you have to go to the database server, which requires an application to do that. So that would be something that would be a network application-level protocol in any event. The alleged modification that is relied upon by Dr. Clark is referenced, and they rely on one particular portion from Column 7 of the Duncan patent, and that portion is talking about using an access control unit, providing access controls, and it says that that is a security protocol. That's not the transfer protocol that we're talking about. It's embedded in a transfer protocol, but it is not the same thing, and if the Court looks at the descriptions of the detailed description of the invention and the detailed description of the figures of the patent, it's very clear that the insertion of the access control information on one end and then the use of the access control information on the other end are done by different components in the proxies at both ends of the systems. On one end, there's an access control unit. There are privilege generators. There's a security control unit. Those are all separate from the protocol converters, and the description, which is in, I believe it's in Column 10 of Duncan. Yeah, it actually starts in Column 10 talking about the server side, and then it goes on to Column 11 on the browser side, and it specifically talks about how the security control module or unit and the privilege generator and those put in the access control information, but that's not the protocol conversion. Then it says you go to the protocol converter, and you convert to whatever protocol you need. There is not a lot of specificity in Duncan about what kind of protocols you need because those were, as Dr. Black said in his declaration, those were already well-known in the art. There were various standards organizations that had RPCs. You also, at least today, appear to be making some distinction between network protocol and network application protocol. I feel like you may be addressing and passing, but can you directly respond to that distinction? Yes, Your Honor. That was the only claim limitation that was actually asked to be construed by the board. Network application protocol. Network application-level protocol, and as I understand the argument today, I believe my friend on the other side is saying that Duncan discloses maybe converting to a network protocol but not a network application-level protocol, but there is evidence upon which the board relied in the portion that was discussed before where Dr. Black says that the conversion that is done is to a network application-level protocol. Thank you. So it is still Bakke's sign's contention that the claim construction argument was forfeited, that there is no implicit claim construction because the board said under whatever construction Duncan discloses the claim convention. It is forfeited if the board in footnote 4 recognizes that the argument is there and says we don't need to deal with it. Well, I'm looking more at what was said by Dr. Clark as an individual and by his counsel during the process where, you know, I asked him in his deposition, do you construe translation, and he said, no, we rely on plain meaning. And at a certain point, you know, you have to come out when you're asked and say there is a construction, and I don't think they ever really did that. But anyway, that's Bakke's sign's position, but we don't think it's material to the determination that substantial evidence supported the finding that the board made in validating the patents. And the only dispute, my understanding, in terms of what Duncan discloses relates to the translating or translation limitations? It's 1.6, I think the board called it. It's the translation limitation from a first protocol to a second network. Not a second, a target network application level protocol. You mean that the other side does agree that every other limitation is disclosed by Dr. Clark? There was no attempt to challenge any of those. So both network application level protocols on each side. Correct. The first network application level protocol is the one that gets doctored up with the additional security stuff. And then it gets translated, right, to the target, meaning another one that's the target. It's a target because that's where you're sending the beefed up security information. I was speaking from memory. I think it's the data that is doctored up. Yeah. And then the protocol in which the data is wrapped. That's what I mean. The data is wrapped into the protocol. Right. Right, exactly. And it's actually a separate step, and that's how they got these patents. There were rejections of the parent application, and then they separated out the step where the security enhancements are added from the protocol translation step. If the Court has no further questions. Thank you. Okay, I'd like to first address Judge Cunningham's question. It would be pages 18 and 19 of the opening brief, and section B, pages 9 and 10 of the reply brief, where we discuss this issue of network application level protocol versus network protocol. And with respect to the discussion of what kind of protocol comes out of Converter 71, again, I would refer to Duncan, appendix 120 of column 11, where I guess lines 43 through 46, where the explanation of Converter is it's a range between the network 25 and the security control unit. The browser functionality thereof, converting the information according to the network protocol, according to the network protocol employed, and according to the form of the presentation of the information employed in the browser. Again, while Dr. Clark certainly doesn't purport to have invented any new protocols, there still has to be a teaching to convert to the kind of protocol that's required for his system. And so Duncan simply isn't concerned with the issue that Dr. Clark's concerned with, apparently, so they didn't specify what kind of protocol was being converted to here. But Dr. Clark did, and in fact, for Dr. Clark's invention to realize its benefits, the protocol needs to be, the target protocol needs to be a network application level protocol so it can pass through the firewall. Is there no other questions from the audience? Thank you. We thank both sides that this is submitted. Thank you.